937 So.2d 996 (2006)
Lakenta Markee PEARSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00707-COA.
Court of Appeals of Mississippi.
September 12, 2006.
Carol L. White-Richard, attorney for appellant.
*997 Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before LEE, P.J., CHANDLER and ROBERTS, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. Lakenta Pearson, Anthony Edwards, and Lavar Brady were indicted by the Washington County Grand Jury for armed robbery. Brady received a plea bargain for his testimony against Pearson and Edwards. Pearson and Edwards were jointly tried and, on January 26, 2005, found guilty by a Washington County Circuit Court jury of armed robbery. They were sentenced by the judge to ten years, with five years suspended, to be served in the custody of the Mississippi Department of Corrections. Pearson filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was denied by the trial court. Aggrieved, Pearson now appeals to this Court asserting only one issue: the trial court erred in failing to grant his motion for a new trial because the verdict was against the overwhelming weight of the evidence. Finding no merit, we affirm.

FACTS
¶ 2. On November 26, 2003, at approximately 1:35 a.m., three males wearing black ski masks entered and robbed Ting's Grocery in Greenville, Mississippi. According to Cheryl Lim, the cashier at Ting's during the robbery, the first man entered the store and told her to get on the ground; the second man came in, jumped over the counter, and began taking money from the cash register; and the third man stood by the door holding a rifle. Lim took the ski mask off the man taking money from the cash register, but was unable to see his face. Al Lim, Cheryl's father and the owner of Ting's, was in the back of the store during this time and did not witness the robbery. He testified that he ran out into the store's parking lot after the robbers left and observed a white SUV with a spare tire on the back and no license plate driving away.
¶ 3. Greenville Police Investigator Eric Sutton arrived at Ting's around 1:40 a.m. and, after viewing the surveillance video footage, was able to identify Anthony Edwards as the individual who jumped across the counter and had his mask removed during the robbery. Sutton subsequently left Ting's with the intention of locating the white SUV seen fleeing the scene. At approximately 2:12 a.m. he spotted a vehicle matching the description provided by Mr. Lim and stopped it to conduct an investigative stop. The sole occupant of the vehicle was Lavar Brady, who was arrested and charged with armed robbery. Brady gave the police a voluntary statement identifying Anthony Edwards and Lakenta Pearson as accomplices to the robbery. Pearson and Brady have completely different versions of the events surrounding the armed robbery at Ting's. Pearson denies any involvement in the crime, while Brady claims Pearson was the person wielding the rifle during the robbery.

Brady's Version
¶ 4. Brady stated that he accompanied three friends to Pearson's house between 12:30 and 1:00 a.m. Brady also stated that he had never been to Pearson's house prior to that night. Brady, Pearson, and Edwards were in the front of the house talking, while Pearson's sister, his girlfriend, Junior Clark, and two other people were playing cards in a room in the back of the house. Brady listened as Pearson and Edwards discussed a plan to rob Ting's. Brady was ultimately convinced to participate in the robbery. Edwards took *998 the tag off Brady's SUV, Pearson picked up the rifle from somewhere outside, and then Brady drove them to Ting's. Brady entered the store first and told everybody to get down. Edwards came in next, jumped over the counter, and took $12 from the cash register before having his mask removed by the cashier. Pearson entered the store last and stood in the doorway with the rifle. Brady drove Pearson and Edwards back to Pearson's house and dropped them off there. He did not pick up Clark, but drove back in the direction of Ting's. He was pulled over by Officer Sutton shortly thereafter.

Pearson's Version
¶ 5. Pearson denied involvement, stating that he was at his mother's house with his girlfriend, Natasha Jackson, during the robbery. Pearson testified that he had played spades earlier in the evening with several friends at his house, but that Brady, Edwards, and Clark never came over to his house that night, nor did he ever see them that night. Pearson testified that he was not friends with either Brady or Edwards and had never heard of Junior Clark. According to Pearson, he knew Brady from high school, where they were both seniors and had a few classes together, and he was friends with one of Brady's cousin. Pearson was acquainted with Edwards, but had only "seen him around." Pearson did not own or possess a firearm at the time of the armed robbery. Pearson had three witnesses testify on his behalf, all who stated that he did not rob Ting's.

DISCUSSION OF ISSUES

I. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 6. Pearson's only issue on appeal is that the guilty verdict was against the overwhelming weight of the evidence. However, Pearson also claims that the evidence was not "sufficient" and asks the court to "reverse and render this case because the verdict was against the overwhelming weight of the evidence and contrary" (emphasis added). He fails to understand the distinction between the legal sufficiency and the weight of the evidence. A motion for judgment notwithstanding the verdict tests the legal sufficiency of the evidence, while a motion for a new trial asks that the jury's guilty verdict be vacated on grounds related to the weight of the evidence. May v. State, 460 So.2d 778, 780-81 (Miss.1984). "These motions are separate and distinct and perform different offices within our criminal procedural system, although . . . the distinction is frequently blurred." Id. at 780. "If the evidence is found to be legally insufficient, then discharge of the defendant is proper." Collier v. State, 711 So.2d 458, 461 (Miss. 1998). By contrast, if "the verdict is against the overwhelming weight of the evidence, then a new trial is proper." Id.
¶ 7. By asking the Court to "reverse and render," Pearson is implicitly disputing the legal sufficiency of the evidence, appealing the trial judge's denial of his JNOV motion, and asking this Court to discharge him. By alleging that his guilty verdict is against the overwhelming weight of the evidence, Pearson is appealing the trial court's denial of his motion for a new trial. Since Pearson does not argue that the trial court erred in denying his JNOV motion and fails to cite any authorities in support of that argument, this Court is under no obligation to consider this assignment of error. McClain v. State, 625 So.2d 774, 781 (Miss.1993) ("[F]ailure to cite any authority may be treated as a procedural bar."). Therefore, this opinion will only address Pearson's assignment of error relating to the trial court's denial of his motion for a new trial.
*999 ¶ 8. In determining whether a jury verdict is against the overwhelming weight of the evidence the court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss. 1997) (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). The court will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Benson v. State, 551 So.2d 188, 193 (Miss.1989) (citing Groseclose v. State, 440 So.2d 297, 300 (Miss.1983)). "Factual disputes are properly resolved by the jury and do not mandate a new trial." Benson, 551 So.2d at 193 (citing Temple v. State, 498 So.2d 379, 382 (Miss.1986)).
¶ 9. Pearson challenges the weight of the evidence by arguing that the jury's guilty verdict was based solely on the uncorroborated testimony of an accomplice, Lavar Brady, and that Brady's testimony was unreasonable, self-contradictory and substantially impeached. The supreme court has held that the testimony of an accomplice must be viewed "with great caution and suspicion. Where it is uncorroborated it must also be reasonable and not improbable, self-contradictory or substantially impeached." Jones v. State, 368 So.2d 1265, 1267 (Miss.1979) (citations omitted). See also Blocker v. State, 809 So.2d 640, 645(¶ 17) (Miss.2002). "If the uncorroborated accomplice testimony does not suffer from these infirmities, such testimony may be found to adequately support a conviction." Johns v. State, 592 So.2d 86, 88 (Miss.1991).
¶ 10. Pearson's argument lacks merit because Brady's testimony was partially corroborated, and only slight corroboration of an accomplice's testimony is required to sustain a conviction. Feranda v. State, 267 So.2d 305, 307 (Miss.1972). Brady testified that Anthony Edwards participated in the robbery and was the one who jumped over the counter and removed the money from the cash register. This testimony was corroborated by Investigator Eric Sutton, who testified that he made a positive identification from Ting's surveillance video of Anthony Edwards as the individual who jumped across the counter and had his mask removed. Brady's description of the robbery also corresponded exactly with Cheryl Lim's description. Additionally, Brady's testimony was corroborated by the fact that he was able to identify some of the people playing cards at Pearson's house and by the fact that he knew they were playing spades.
¶ 11. The supreme court has stated that "jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness." Groseclose, 440 So.2d at 300. The credibility and reasonableness of Brady's testimony was for the jury to determine. Young v. State, 425 So.2d 1022, 1024 (Miss.1983). The jury found Brady's testimony credible and reasonable, rather than the testimony of Pearson and his alibi witnesses.
¶ 12. The jury was made aware of the plea bargain Brady received in exchange for his testimony against Pearson and Edwards, and the trial court granted the following instruction concerning accomplice testimony:
A person criminally involved with others in a crime is an accomplice. The testimony of an accomplice is to be considered and weighed with great care and caution and suspicion. You may give it such weight and credit as you deem it is entitled.
*1000 ¶ 13. Considering the court's precautionary instruction and accepting Brady's testimony as true, the verdict of the jury was not against the overwhelming weight of the evidence, and the trial court did not abuse its discretion in refusing to grant a new trial.
¶ 14. Finding the assignment of error to be without merit, we affirm.
¶ 15. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS TO SERVE FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION AND PAY $250 TO THE CRIME VICTIMS' COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.