BARNES, J.,
 

 for the Court:
 

 ¶ 1. A Coahoma County grand jury indicted DeMarco Wilkins a/k/a “Rambo” for the following crimes: Count I, aggravated assault of Michael Martin; Count II, aggravated assault of Thaddeus Houston; Count III, murder of Martin; Count IV, felon in possession of a firearm; and Count V, shooting into an occupied dwelling. On January 22, 2009, a jury sitting before the Coahoma County Circuit Court convicted Wilkins of Counts I, III, IV, and V, but acquitted him of Count II. The circuit court sentenced Wilkins as a habitual offender to serve a term of twenty years on Count I, life on Count III, five years on Count IV, and ten years on Count V. The trial court ordered the sentences imposed in Counts I, III, and IV to run consecutively but ordered the sentence in Count V to run concurrently with those sentences. Following unsuccessful post-trial motions for a judgment notwithstanding the verdict (JNOV) and for a new trial, Wilkins now appeals raising one issue: whether the jury verdicts are against the weight of the evidence. Finding no error, we affirm.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On the afternoon of November 27, 2007, a shooting occurred on the 600 block of Paul Edwards. Street in Clarksdale, Mississippi. Linda Whitfield (Linda) testified that she and Wilkins were in her grandmother’s backyard when they heard two shots fired. Linda claimed that Wilkins ran off toward the shots while she stayed in the backyard. The shots were fired between 4:30 p.m. and 5:00 p.m. According to Linda, she saw Jerry Johnson a/k/a “Head” and Martin “easing around the side of Johnson’s house” as police cars were driving by the area shortly after the shooting occurred. Thereafter, Linda’s aunt took her to work at Walmart, where she clocked in at 5:00 p.m.
 

 ¶ 3. At 4:43 p.m., the Clarksdale Police Department received a call reporting the shooting at the 600 block of Paul Edwards Street to which Officer Steve Poer responded at 4:44 p.m. Officer Poer found Martin, who told him that he had been shot in the leg, but did not know who had shot him. Officer Poer testified that it was not unusual in Clarksdale for a victim to refuse to identify his shooter. Martin’s sister, Rosie James (Rosie), testified that Martin called her to take him to the hospital. Rosie testified that on the way to the hospital, Martin told her that Wilkins had shot him. Martin called his niece, Lisa Marbley, from the hospital; she testified that Martin told her he did not know who had shot him.
 

 ¶ 4. Michael Moore testified that he was at the 600 block of Paul Edwards Street when the shooting occurred. He stated that Wilkins got into an argument with Martin and Johnson about a bag of low-grade marijuana that they had sold to Wilkins’s brother earlier that morning. Wilkins called Martin out into the street to
 
 *109
 
 fight. Thereafter, Johnson urged: “Forget all that. Let’s go around and get the pistol and burn one on him.” Moore claimed that Willie Perryman, a bystander, told Wilkins that he needed to leave if he did not have a gun. Another bystander handed Wilkins a gun, and Wilkins went behind a blue apartment. Martin and Johnson followed Wilkins around the corner of the blue apartment, and two shots were fired. Moore testified that while he did not see Wilkins shoot the gun, neither Martin nor Johnson had a gun.
 

 ¶ 5. Ella Sherrod testified that sometime between 7:00 p.m. and 7:30 p.m. on November 27, 2007, she heard gunshots outside her house. She sent her daughter Shanika to get the kids across the street. When Shanika got to the door, someone opened the door and rushed in behind her; Sherrod heard gunshots. Sherrod did not see the shooter. She also testified that prior to this incident, there were no holes in her front door, no shells in her front yard, no guns discharged in her house, and the glass front door was not broken. Sha-nika testified that at approximately 7:00 p.m. she was on her way out of her house when she heard gunshots. When she opened the door, everything turned blurry, and she felt gun smoke on her. Someone rushed in and transferred blood onto Sha-nika’s pants; she was burned badly on her neck.
 

 ¶ 6. Curtis Cooley testified that he called Martin out of his house to give him a grape soda that he had previously purchased for him at the Eighth Street Grocery. Martin came outside, and a man came out from the side of the house, yelled, ‘What’s up now, bit**,” and fired two shots. Houston took off running while Martin ran into Sherrod’s house. The shooter chased Martin into the house, and additional gunshots were fired. Cooley identified Wilkins as the shooter and testified that Wilkins’s gun appeared to be a nine millimeter; Martin was unarmed. Wilkins came out of the house and took off running; Martin remained inside. Cooley found Martin lying on the floor, asking for help, and bleeding from his head, hand, and leg. Cooley testified that Martin did not do anything violent or to provoke Wilkins. Cooley found Houston, who had run across a field to a neighbor’s house, shot in the leg and lying on her porch, knocking on her door.
 

 ¶ 7. Roy Washington III testified that he heard the second shooting right before dark. Washington claimed that Wilkins was in Washington’s house at 512 Sunflower drinking with him when the shots were fired. On cross-examination, Washington admitted he had receive a letter from Wilkins approximately a week before the trial with instructions for his testimony. Sergeant Leroy Austin, an employee at the Coahoma County Jail, confirmed that jail records showed that Wilkins had sent a piece of mail to Washington a few days before trial.
 

 ¶ 8. Officer Steve Simpson testified that on November 27, 2007, he received a “shots fired” call at the corner of Paul Edwards and Sixth Street and arrived on the scene after 7:00 p.m. He found Houston lying on a porch with a gunshot wound to the leg. Upon being told by Cooley that another man had been shot on Baird Street, Officer Simpson left Officer Lee Clayton with Houston and went to Baird Street. At the second house, Officer Simpson found a young black male lying on the floor, face down in a puddle of blood. He had been shot in the head. Officer Simpson found a trail of bullets coming from half way or two thirds of the way from the driveway to the house. He also found bullet holes in the door to the house. Officer Simpson testified that Coo
 
 *110
 
 ley identified Wilkins at the police department as the shooter.
 

 ¶ 9. Sergeant Robbie Linley testified that he responded to a call at 606 Baird Street shortly after 7:22 p.m. on November 27, 2007. He observed Martin, deceased, lying on the floor just inside the living room area of Sherrod’s house. Sergeant Linley took pictures of the scene and collected and marked pieces of evidence including shell casings and spent projectiles. The glass in the door was shot out, and there were several bullet strikes into the inner door at 606 Baird. Five shell casings were recovered in the yard area; one projectile and a partial projectile were found inside the residence, and one shell casing was found inside the door. Sergeant Linley testified that all the hulls were identified as spent nine-millimeter shell casings. Sergeant Linley further testified that Cooley identified Wilkins as the person who did the shooting.
 

 ¶ 10. Officer Clayton also responded to the scene and took witnesses’ statements. He testified that although Cooley first told him, “I don’t know anything,” once at the police department, Cooley stated Wilkins was the shooter.
 

 ¶ 11. Dr. Steven Hayne performed the autopsy on Martin. Dr. Hayne’s external examination revealed three small abrasions: one on the victim’s back, one on his left arm, and one on his right knee. There was also a cut over the bridge of the Martin’s nose. Dr. Hayne testified that he found evidence of five gunshot wounds, two lethal and three nonlethal. Dr. Hayne explained that one of the gunshot wounds was inflicted immediately prior to the subsequent infliction of four additional gunshot wounds. There was a bandage around one of the gunshot wounds, indicating medical intervention before the additional four wounds. Dr. Hayne testified that there was a lethal gunshot wound over the right side of Martin’s back that fractured the sixth rib and went through the right lung and diaphragm; the abdominal aorta was struck, causing extensive bleeding in the right chest cavity and abdominal cavity. Dr. Hayne testified that a second lethal gunshot wound to the victim’s head produced a wound track through the cerebral hemispheres and a large subdural hemorrhage. Dr. Hayne ruled the manner of death as homicide.
 

 Whether the verdicts are contrary to the overwhelming weight of the evidence.
 

 ¶ 12. Wilkins claims that the denial of his motion for a new trial was error as the evidence presented was weak and contradicted. Specifically, he argues that no gun was recovered linking him to the crime, and he presented alibi testimony as to both shootings. On a question on the weight of the evidence, the Mississippi Supreme Court has stated the standard of review is as follows:
 

 This Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice.
 

 Valmain v. State,
 
 5 So.3d 1079, 1086 (¶ 30) (Miss.2009) (quoting
 
 Todd v. State,
 
 806 So.2d 1086, 1090 (¶ 11) (Miss.2001)).
 

 ¶ 13. Count I charged Wilkins with the aggravated assault of Martin. Under Mississippi Code Annotated section 97 — 3—7(2)(b) (Rev.2006 & Supp.2009), one is guilty of aggravated assault if he “attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.... ” Moore testified that
 
 *111
 
 Wilkins was handed a gun immediately before Martin was shot and was at the location from where the shots were fired. Neither of the other two men seen going to that location was armed. Rosie testified that Martin told her Wilkins shot him. Although others testified that Martin did not identify the shooter, it was reasonable for the jury to believe that Martin would tell his sister who had shot him. Linda attempted to provide Wilkins an alibi by testifying that Wilkins was with her in her grandmother’s backyard and only ran toward the two shots after they were fired.
 

 ¶ 14. It is the responsibility of the jury to weigh testimony and to determine its credibility.
 
 Jones v. State,
 
 381 So.2d 983, 989 (Miss.1980). The supreme court has stated that “jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness.”
 
 Pearson v. State,
 
 937 So.2d 996, 999 (¶ 11) (Miss.Ct.App.2006) (quoting
 
 Groseclose v. State,
 
 440 So.2d 297, 300 (Miss.1983)). The jury obviously found Moore’s and Rosie’s testimonies more credible and reasonable than Linda’s. It was reasonable for the jury to weigh Linda’s testimony and determine that she was not a credible witness.
 

 ¶ 15. Wilkins contends that the facts of this case warrant the application of the principle that a conviction may be reversed where the evidence presented of the defendant’s guilt creates such serious doubt that “another jury should be permitted to pass upon this question.”
 
 Quarles v. State,
 
 199 So.2d 58, 61 (Miss.1967);
 
 see Hux v. State,
 
 234 So.2d 50, 51 (Miss.1970). The cases relied upon by Wilkins are, however, distinguishable from the present case. In
 
 Quarles,
 
 there was no evidence presented that the defendant was in the vicinity of the crime scene when the crime occurred.
 
 Quarles,
 
 199 So.2d at 60. In
 
 Hux,
 
 no evidence was presented that the defendant participated in the crime.
 
 Hux,
 
 234 So.2d at 50. In this case, -witnesses identified Wilkins as being present at the scene when the crimes occurred and the victim identified Wilkins as the shooter. The evidence as to Count I, when viewed in the light most favorable to the verdict, supports Wilkins’s conviction for the aggravated assault of Martin.
 

 ¶ 16. Count III charged Wilkins with Martin’s murder. Mississippi Code Annotated section 97-3-19(1) (Rev.2006) provides that: “The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases: (a) When done -with deliberate design to effect the death of the person killed [or] ... (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual_” Additionally, Count V charged Wilkins with shooting into an occupied dwelling. Mississippi Code Annotated section 97-37-29 (Rev.2006) provides: “If any person shall willfully and unlawfully shoot or discharge any pistol, shotgun, rifle or firearm of any nature or description into any dwelling house or any other building usually occupied by persons, whether actually occupied or not, he shall be guilty of a felony[.]”
 

 ¶ 17. Cooley testified at trial that he saw Wilkins shoot Martin and fire into Sherrod’s house using a nine-millimeter gun. Officer Simpson also testified that Cooley identified Wilkins as the shooter on the night of the incident. Sergeant Linley identified the spent hulls found in Sher-rod’s front yard and the inside of her house as nine-millimeter shells. Sherrod testified that there had been no gunshots fired in or around her house prior to the incident. Wilkins contends that his convic
 
 *112
 
 tion should be reversed because this case is in line with
 
 Mister v. State,
 
 190 So.2d 869, 869 (Miss.1966), where the supreme court found that a conviction is properly reversed where the prosecution’s case rests on the testimony of one witness who was in a related situation to that of the defendant, and whose testimony was inconsistent, unreasonable, and impeached. In
 
 Mister,
 
 however, the State’s case was based solely on the testimony of one witness.
 
 Id.
 
 at 871. The witness had a substantial interest in putting the blame on the defendant in order to deflect the guilt from himself.
 
 Id.
 
 at 870-71. The witness told several parties that the defendant was not guilty prior to his contradictory testimony at trial. Additionally, the court found that even if the witness’s testimony was accepted as true, it was unreasonable.
 
 Id.
 
 at 870.
 

 ¶ 18. In this case, there is no evidence that Cooley was trying to put the blame on Wilkins in order to deflect guilt from himself. Cooley did not flee the scene but stayed and talked with the police officers. Unlike the witness in
 
 Mister,
 
 Cooley did not tell any parties that Wilkins was not the shooter. Cooley’s account of the incident was reasonable, and he was not impeached. As previously stated, it is the jury’s responsibility to determine the weight and credibility of a witness’s testimony, and the jury could have reasonably believed that Cooley saw Wilkins shoot Martin and fire a gun into Sherrod’s house.
 

 ¶ 19. Washington testified that Wilkins was at his house drinking at the time of the second shooting. Additionally, Washington’s statement to police was that Wilkins was at his house at the time of the shooting. The credibility of Washington’s testimony was impeached by the State’s introducing a copy of a letter Wilkins had sent to Washington a couple of days before trial, in which Wilkins told Washington what to say and what not to say at trial. The jury could have reasonably concluded that Washington’s testimony was fabricated and that Wilkins was not drinking at Washington’s house at the time of the second shooting.
 

 ¶ 20. The evidence, when viewed in the light most favorable to the verdict, supports Wilkins’s conviction for the murder of Martin under section 97 — 3—19(l)(a) or (b) and the discharge of a weapon into a dwelling house in violation of section 97-37-29.
 

 ¶ 21. Count IV charged Wilkins as a felon in possession of a firearm in violation of Mississippi Code Annotated section 97-37-5 (Rev.2006), which provides that “[i]t [is] unlawful for any person who has been convicted of a felony ... to possess any firearm.... ” Moore and Cooley, both eyewitnesses, testified that Wilkins had a gun. Further, the evidence is undisputed that Wilkins was a prior convicted felon at the time. The evidence, when viewed in the light most favorable to the verdict, supports Wilkins’s conviction for possession of a firearm by a felon.
 

 ¶ 22. Based on the foregoing, we find that Wilkins’s guilty verdicts are not so contrary to the evidence as to constitute an unconscionable injustice. Furthermore, the evidence does not weigh heavily against the jury’s verdicts. Wilkins’s convictions are, thus, not against the overwhelming weight of the evidence.
 

 ¶ 23. Accordingly, we affirm.
 

 ¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS; COUNT III, MURDER, AND SENTENCE OF LIFE; COUNT IV, FELON IN POSSESSION OF A FIRE
 
 *113
 
 ARM, AND SENTENCE OF FIVE YEARS; AND COUNT V, SHOOTING INTO AN OCCUPIED DWELLING, AND SENTENCE OF TEN YEARS, WITH THE SENTENCES IN COUNTS I, III, AND IV TO RUN CONSECUTIVELY, AND WITH THE SENTENCE IN COUNT V TO RUN CONCURRENTLY WITH THE SENTENCES IN COUNTS I, III, AND IV, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR.