## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00979-COA

SAMMIE HENRY PETTIS A/K/A SAMMIE          APPELLANT
PETTIS A/K/A SAMMIE H. PETTIS

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/15/2017 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR GERBER |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/22/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE LEE, C.J., CARLTON AND WESTBROOKS, JJ.

## WESTBROOKS, J., FOR THE COURT:

¶1.     A Forrest County Grand Jury indicted Sammie Henry Pettis for armed robbery as a nonviolent habitual offender. After a two-day trial, Pettis was found guilty and was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole or probation. Following his unsuccessful motion for a judgment notwithstanding the verdict (JNOV) or a new trial, Pettis appeals. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    On July 11, 2016, Pettis entered Central Sunbelt Credit Union in Hattiesburg, Mississippi, waved a gun in the air and announced that he was robbing the bank. Christopher Lee, a teller at the bank, testified that Pettis held the gun to his head, placed a bag in front of him, and demanded that he fill the bag with money. Lee testified that he was fearful because of Pettis's gun. Pettis then went to Tammy Jones-Glover, another teller, and demanded that she fill the bag with money. Like Lee, Jones-Glover later testified that she feared for her life because Pettis pointed the gun at her as she filled the bag with money. Shortly after this interaction with Jones-Glover, Pettis left the bank.

¶3.    Lawanda Hall, another Central Sunbelt employee, called 911 and reported the robbery. Hall described the assailant as an African-American male wearing a burgundy shirt, a black fedora, and dark sunglasses. Another witness, Kristi Polk, described the fedora as a "Michael Jackson" hat because it was "sparkly." The shirt, hat, and sunglasses were found with Pettis shortly after he was apprehended.

¶4.    Officer Eric Gannon[1] of the Hattiesburg Police Department was en route to the bank when he overheard that the suspect was headed toward AAMCO Transmission. Officer Gannon was on his way to AAMCO when he spotted Forrest Martin fishing in a nearby creek. Officer Gannon then found Pettis hiding in the water. Pettis was trying to stuff a burgundy or maroon shirt in a bag. According to Officer Gannon, Pettis said, "you caught me."

¶5.    When Detective Gareth Wood arrived at the creek, Pettis was already in custody.

---

[1] At the time of Pettis's trial, Gannon was employed as a deputy with the Forrest County Sheriff's Department.

Detective Wood later testified that he asked Pettis to identify himself, and Pettis complied. Pettis then said that he was "having a bad day," he "just robbed a bank," and that he "parked his car too far away." After Pettis arrived at the police station, he waived his *Miranda*[2] rights and gave a full confession.

¶6. Following a two-day trial, Pettis was found guilty of armed robbery and sentenced as a nonviolent habitual offender to twenty years in MDOC custody. His appellant counsel claims that the circuit court erred when it sentenced Pettis as a habitual offender. In a pro se supplemental brief, Pettis claims the indictment was fatally defective, his armed-robbery conviction is contrary to the overwhelming weight of the evidence, the State presented improper testimony, and he was denied the right to confront an adverse witness.

**DISCUSSION**

**I. Whether the trial court erred by sentencing Pettis as a habitual offender.**

¶7. Pettis asserts that the trial court erred in sentencing him as a nonviolent habitual offender. His reasoning is based on the fact that, incident to his 1997 conviction for escaping from prison, he was sentenced to three years in MDOC custody with two and one-half years suspended and six months to serve.

¶8. Pettis had two prior felony convictions for which he had been sentenced to separate terms of one year or more. The record reflects that in 1989 Pettis had five convictions

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

stemming from one incident.[3] The nonviolent habitual offender statute does not require that one serve a year for each prior felony conviction. Miss. Code Ann. § 99-19-81 (Rev. 2015). It is enough that he was sentenced to at least one year for at least two prior felonies arising from separate incidents. *See id*. Therefore, this issue is meritless.

## II.      Whether Pettis's indictment was defective.

¶9.     Pettis maintains that the indictment was defective because it contained an inaccurate date of the offense and that he could not adequately prepare a defense because he was not adequately notified of the charges against him. "The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by an appellate court." *Davis v. State*, 866 So. 2d 1107, 1110 (¶11) (Miss. Ct. App. 2003). The Mississippi Supreme Court has held "that a variance in the date on an indictment will not be a cause for reversal where there is no prejudice by such variance." *Id*. "The ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Warren v. State*, 187 So. 3d 616, 621-22 (¶10) (Miss. 2016). "An indictment must contain (1) the essential elements of the crime charged, (2) sufficient facts to fairly inform the defendant of the charge which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Id*. at 621 (¶10). Moreover, "Rule 7.06 of the Uniform Rules of

---

[3] Pettis was convicted of armed robbery, kidnaping, burglary of a residence with a firearm, aggravated assault, and grand larceny.

Circuit and County Court Practice[4] states, in pertinent part, that the indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." *Id*. (internal quotation mark omitted).

¶10. The indictment against Pettis charged in part:

> [O]n or about *July 11, 2014*, [Pettis] did willfully, unlawfully[,] and feloniously take, steal, and carry away from the person and/or the presence of, and against the will of Christopher Lee and Tammy Glover, approximately $18,500.00 in U.S. Currency, the property of the said Christopher Lee and Tammy Glover by virtue of their employment at Sunbelt Federal Credit Union as [b]ank [t]ellers, by putting . . . Lee and . . . Glover in fear of immediate injury to their persons, by the exhibition of a deadly weapon, to wit: a handgun, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

(Emphasis added).

¶11. At Pettis's pretrial hearing, the State moved to amend the indictment, because of a scrivener's error. The State argued that Pettis was given proper notice and that there was a simple error with the year listed in the indictment. However, Pettis objected to the amendment.

¶12. Here, we find that Pettis's indictment properly notified him of the charges against him in plain and concise language. The indictment also stated the essential facts regarding the armed robbery at Central Sunbelt Credit Union on July 11, 2016.

¶13. Pettis also argues that his indictment was insufficient, because he was not indicted for

---

[4] Effective July 1, 2017, Rule 7.06 was replaced with Rule 14.1(a) of the Mississippi Rules of Criminal Procedure. But because the proceedings in this case preceded this change, the former rule applies here.

possession of a firearm by a felon under Mississippi Code Annotated section 97-37-5 (Rev. 2014). Pettis alleges that he instead was erroneously indicted and convicted of armed robbery under Mississippi Code Annotated section 97-3-79 (Rev. 2014). But, "the party responsible for determining the charges to present to the grand jury is the State." *Hye v. State*, 162 So. 3d 750, 759 (¶27) (Miss. 2015). Therefore, we find this issue is meritless.

### III. Whether the trial court erred by denying Pettis's motions for a directed verdict, JNOV, or a new trial.

¶14. Pettis challenged the sufficiency of the evidence in his motion for a directed verdict at the end of the State's case, and later in his post-trial JNOV motion. "On review of the sufficiency of the evidence, this Court considers the trial court's ruling at the last time the sufficiency of the evidence was challenged." *Warren*, 187 So. 3d at 627 (¶29). Further, "[i]n reviewing the denial of a motion for JNOV, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at (¶30) (internal quotation mark omitted).

¶15. Pettis asserts that he did not use a deadly weapon, because the police only recovered a "toy pellet gun" and that no "real" gun was used. This Court and the Mississippi Supreme Court have "affirmed armed-robbery convictions where a BB gun was used during the commission of a robbery." *Williams v. State*, 134 So. 3d 732, 735 (¶9) (Miss. 2014) (citing *Saucier v. State*, 562 So. 2d 1238, 1246 (Miss. 1990) ("finding that a broken pellet gun weighing 'three or four pounds,' which could be used as a club to inflict serious bodily injury, met the definition of a deadly weapon under [s]ection 97-3-79"), *overruled on other*

*grounds by White v. State*, 785 So. 2d 1059 (Miss. 2001)); *Thomas v. State*, 936 So. 2d 964, 967 (¶11) (Miss. Ct. App. 2006) (affirming armed-robbery conviction where "[t]here was testimony that a pellet gun can inflict serious bodily injury").

¶16.    Sergeant Neal Rockhold, detective with the Hattiesburg Police Department, testified that Pettis disguised a pellet pistol to look like it would discharge a higher caliber round of ammunition.  Furthermore, Sergeant Rockhold explained that the semi-automatic pellet gun that Pettis used qualified as a gun that could cause death or permanent injury.  Also, the pellet gun comes with a warning that it can cause death.  Jones-Glover and Lee testified that Pettis brandished his pellet gun during the robbery and they both feared for their lives.  Pettis also confessed to the armed robbery.  Considering the evidence in the light most favorable to the verdict, the evidence was sufficient to enable a reasonable jury to find Pettis guilty of the indicted offense.

¶17.    Pettis also attacked the weight of the evidence by filing a motion for a new trial. When reviewing a challenge to the weight of the evidence, the Court will not overturn a verdict unless it "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."  *Warren*, 187 So. 3d at 628 (¶32).

¶18.    The State proved that Pettis took money from the tellers at Central Sunbelt using a pellet gun and put the tellers in fear for their lives.  Accordingly, we find this issue is meritless, and we find no error in the trial court's denial of Pettis's JNOV motion and motion for a new trial.

> **IV.    Whether the verdict was against the overwhelming weight of the evidence.**

7

¶19. Pettis maintains that the verdict was against the overwhelming weight of the evidence, because the State never produced a "real" gun or firearm. "In determining whether a jury verdict is against the overwhelming weight of the evidence the court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Pearson v. State*, 937 So. 2d 996, 999 (¶8) (Miss. Ct. App. 2006). Moreover, "[t]he court will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Id*. Considering the evidence previously mentioned in this opinion, we find that the verdict is not contrary to the overwhelming weight of the evidence such that allowing the verdict to stand would sanction an unconscionable justice. Therefore, we find this issue is meritless.

**V.     Whether the trial court admitted inadmissible evidence.**

¶20. Although slightly confusing, Pettis argues that the trial court erred in allowing unspecified witness testimony. Pettis does not identify this witness, but asserts that the questioning of this witness went beyond the scope of cross-examination.

¶21. It appears Pettis references portions of Deputy Gannon's redirect testimony:

> Q.     [Defense Counsel] asked you about Forrest Martin?
>
> A.     Yes, ma'am.
>
> Q.     And how you're able to exclude him as a suspect. Is Forrest basically a fisherman?
>
> A.     Yes, ma'am. He fishes in multiple lakes. If it's got a body of water and there's potential fish in it, he's going to fish it. Yes, ma'am.

Q.      So your run-ins with Forrest [are] maybe sometimes when he's fishing where he shouldn't be?

DEFENSE COUNSEL:      Objection, Your Honor.  That's beyond the scope of my cross.

THE COURT:      I'll overrule it.  I won't let you go too far.

Q.      What mode of transportation do you know Forrest Martin to have?

A.      It's either walking, or he's on a bike.

Q.      A bicycle?

A.      Yes, ma'am.

Q.      And that day did it appear that he had everything with him, like he normally does to fish.

A.      Yes, ma'am, minus the bicycle.

THE STATE:      No further questions.

¶22.    We find that the trial court's admission of this testimony was not in error.  During direct examination, Deputy Gannon was asked about Martin and his appearance right after the police arrived at the scene and found Pettis.  Also, during Deputy Gannon's cross-examination, he was asked about his interaction with Martin and his decision to rule him out as a suspect.  Deputy Gannon explained that he had previous interactions with Martin during cross-examination.  The following is an excerpt of Deputy Gannon's cross-examination:

Q.      Okay, now, you said that once you approached, you saw Mr. Martin?

A.      Uh-huh.

Q.      And in your interaction with Mr. Martin, how long did that take?  Or how long did that last?

A. Maybe about a minute, sir.

Q. Maybe about a minute?

A. Yes, sir.

Q. Okay, and at that point, you ruled Mr. Martin out because?

A. Because of his body language and his - - my previous interactions and the non-description that did not lead me to believe that Forrest was a suspect.

¶23. "The scope of redirect examination, while largely within the discretion of the trial court, is limited to matters brought out during cross-examination." *Thompson v. State*, 157 So. 3d 844, 854 (¶33) (Miss. Ct. App. 2015). "However, we will not disturb a trial court's ruling on matters pertaining to redirect examination unless there has been a clear abuse of discretion." *Id*. (internal quotation mark omitted). Defense counsel questioned Deputy Gannon about his interaction with Martin during cross-examination. As a result, we find this issue is without merit.

### VI. Whether the trial court committed a Confrontation Clause violation.

¶24. Pettis asserts that the trial court violated his Sixth Amendment right to confront Martin. "Under both the United States Constitution and the Mississippi Constitution, an accused has a right to confront and cross-examine the witnesses against him." *Hingle v. State*, 153 So. 3d 659, 662 (¶7) (Miss. 2014). Pettis argues that Martin's statements to police were presented to the jury in error through the testimony of another witness and that he was not given the opportunity to cross-examine him. As a result, Pettis asserts that Martin's statements to the police were testimonial in nature. Once again, Pettis does not identify the

10

witness. However, it appears that Pettis was referring to the testimony of Detective Gareth Wood of the Hattiesburg Police Department. During the cross-examination, defense counsel asked Detective Wood if Martin had completed a written statement. Detective Wood answered "yes, sir."

¶25. This Mississippi Supreme Court has stated that:

> [S]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Smith v. State*, 986 So. 2d 290, 297 (¶21) (Miss. 2008) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)).

¶26. However, neither Detective Wood nor any other witness testified as to the contents of Martin's written statement. Furthermore, Pettis did not object to any testimony referencing Martin's written statement. We have held that "the failure to object to testimony at trial 'waives any assignment of error on appeal.'" *Ross v. State*, 16 So. 3d 47, 57 (¶21) (Miss. Ct. App. 2009). Therefore, we find that this issue was not preserved for appeal.

## CONCLUSION

¶27. Accordingly, we find no error in the trial court's denial of Pettis's JNOV motion and we affirm the conviction and sentence.

¶28. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR.**