# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-00926-SCT

*SHIRLEY WARREN a/k/a SHIRLEY OLIVER*
*WARREN a/k/a SHIRLEY NICHOLS WARREN*
*a/k/a SHIRLEY OLIVER*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/01/2013 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| TRIAL COURT ATTORNEYS: | MICHAEL GUNTHER HOWIE |
| | JAY HOWARD |
| | ANDY DAVIS |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANDY DAVIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE WINSTON COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 03/31/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.    Shirley Warren was convicted in the Circuit Court of Winston County of possession

of a controlled substance in a correctional facility.  The trial court sentenced her to seven

years in the custody of the Mississippi Department of Corrections, with four years suspended and five years of supervised probation. The Court assigned Warren's appeal to the Court of Appeals, which ruled that Warren's indictment was fatally defective because it failed to identify the controlled substance that Warren allegedly possessed. *Warren v. State*, 2015 WL 326660, at \*2 (Miss. Ct. App. Jan. 27, 2015). The Court of Appeals reversed and remanded for further proceedings. *Id.*

¶2. We granted the State's petition for a writ of certiorari to review the judgment of the Court of Appeals, and we hold that Warren's indictment sufficiently charged her with possession of a controlled substance in a correctional facility. We further hold that Warren's other appellate issues lack merit. We reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Circuit Court of Winston County.

### *FACTS*

¶3. On June 9, 2012, Warren visited the Winston-Choctaw Regional Correctional Facility in Winston County, Mississippi. When she checked in with the visitation officer, two corrections officers escorted her to a restroom for a search of her person. As Warren lifted her shirt, one of the corrections officers, Theresa Carter, saw something protruding from the waistband of her pants. Carter pulled the object out and discovered it was a package of pills. The pills were inside a plastic bag that had been taped to the inside of Warren's waistband. Carter called the warden, Timothy Palmer, and gave him the package of pills.

¶4. Palmer placed Warren under arrest and transported her to the booking area. In the booking area, Palmer told the booking officer that he was going to identify the pills online

2

when Warren stated spontaneously that the pills were Lortab and Xanax. Palmer testified that he submitted the pills to a crime laboratory. William Smith, a former director of forensic chemistry at the Columbus Forensic Laboratory, would later testify that his analysis of the pills revealed that four were Lortab (hydrocodone), a Schedule III controlled substance,[1] and four were Xanax (alprazolam), a Schedule IV controlled substance.

¶5.    On September 26, 2012, a grand jury indicted Warren for possession of a controlled substance in a correctional facility. She filed a motion to dismiss, asserting that the indictment was defective for failing to identify the controlled substances she allegedly possessed. Warren also moved to suppress Smith's testimony and the crime lab test results because the State had not furnished the defense with anything showing Smith's certification or the crime lab's accreditation. She argued that the omissions rendered the test results inherently unreliable. The trial court denied Warren's motions.

¶6.    At the trial, Smith testified over Warren's objection to his qualifications. The trial court denied Warren's motion for a directed verdict, finding that the State had presented sufficient evidence to meet its burden of proof. Warren rested her case without presenting any evidence. The jury found Warren guilty, and the trial court sentenced her to seven years in the custody of the Mississippi Department of Corrections, with four years suspended and five years of supervised probation. The trial court denied Warren's post-trial motion for a judgment notwithstanding the verdict or a new trial.

¶7.    Warren appealed, arguing that the trial court had erred by (1) denying her motion to

_____

[1] After the time of Warren's trial, Lortab was reclassified as a controlled substance, Schedule II. *See* Miss. Code Ann. § 41-29-115(A)(a)(1)(vi) (Rev. 2013).

3

dismiss or void the indictment; (2) denying the motion to suppress; (3) finding that Smith was qualified to testify about the test results; and (4) denying the motions for a directed verdict, judgment notwithstanding the verdict, or a new trial. Warren also argued that cumulative errors had occurred that amounted to reversible error, entitling her to a new trial. We assigned Warren's appeal to the Court of Appeals. The Court of Appeals held that Warren's indictment was defective for failing to identify the controlled substances she allegedly possessed, and it reversed and remanded for further proceedings. We granted the State's petition for certiorari and reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Winston County Circuit Court.

## DISCUSSION

### I. THE INDICTMENT WAS SUFFICIENT TO CHARGE WARREN WITH POSSESSION OF A CONTROLLED SUBSTANCE IN A CORRECTIONAL FACILITY.

¶8. The crime of possession of a controlled substance in a correctional facility is codified at Mississippi Code Section 47-5-198(1), which states in pertinent part that "[i]t is unlawful for any person to sell within, bring to, or be in possession of, in any correctional facility or convict camp within the state or any county, municipal or other jail within the state, except as authorized by law, any controlled substance or narcotic drug." Miss. Code Ann. § 47-5-198(1) (Rev. 2015). Warren's indictment stated that:

SHIRLEY NICHOLS WARREN

On or about June 9, 2012, in Winston County, Mississippi and within the jurisdiction of this Court, did wilfully, unlawfully, feloniously, and knowingly or intentionally, and without authority of law, bring to, or be in possession of, a controlled substance in the Winston Choctaw County

4

Correctional Facility, in violation of Section 47-5-198(1) of the Mississippi Code of 1972, as amended and against the peace and dignity of the State of Mississippi.

¶9. Warren argues that her indictment was insufficient to charge her with possession of a controlled substance in a correctional facility because it did not identify the substance she allegedly had possessed. In a pretrial hearing before the trial court, Warren argued that the identity of the controlled substance is an essential element of the crime, and that the defective indictment left her unable to prepare a defense. The trial court ruled that the indictment was sufficient because it tracked the language of the statute. The trial court noted that the State had provided the identity of the controlled substances to Warren in discovery.

¶10. "[T]he purpose of the indictment is to provide the accused reasonable notice of the charges against him so that he may prepare an adequate defense." *Brawner v. State*, 947 So. 2d 254, 265 (¶31) (Miss. 2006) (citing *Brown v. State*, 890 So. 2d 901, 918 (¶61) (Miss. 2004)). "[A]n indictment must contain (1) the essential elements of the crime charged, (2) sufficient facts to fairly inform the defendant of the charge which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Young v. State*, 119 So. 3d 309, 313 (¶11) (Miss. 2013). Rule 7.06 of the Uniform Rules of Circuit and County Court Practice states, in pertinent part, that "[t]he indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." URCCC 7.06. The Court affords de novo review to a claim that an indictment was fatally defective for failure to include an

5

essential element. *Gilmer v. State*, 955 So. 2d 829, 836 (¶24) (Miss. 2007). "[T]he ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Medina v. State*, 688 So. 2d 727, 730 (Miss. 1996).

¶11.    The Court has held that an indictment that tracks the language of the statute is generally sufficient to inform the accused of the nature and cause of the accusation. *King v. State*, 580 So. 2d 1182, 1185 (Miss. 1991). Warren's indictment undisputedly tracked the language of the statute. Mississippi Code Section 47-5-198(1) proscribes the possession of a controlled substance in a correctional facility, and Warren's indictment alleged that she was in possession of a controlled substance at the Winston-Choctaw Regional Correctional Facility. Nonetheless, the Court of Appeals held that more was required. Relying on its own precedent applying Mississippi Code Section 41-29-139, the Court of Appeals held that an indictment under Section 47-5-198(1) must additionally identify the controlled substance allegedly possessed. *Warren*, 2015 WL 326660, at *2.

¶12.    In so holding, the Court of Appeals cited its opinion in *Hampton v. State*, 860 So. 2d 827 (Miss. Ct. App. 2003). In *Hampton*, the defendant argued that his indictment for sale of an illegal narcotic under Section 41-29-139 failed to identify the nature and quantity of narcotic allegedly sold, and that it was insufficient because the maximum punishment for the offense depended on the factors of nature and quantity. *Id.* at 828 (¶4). The Court of Appeals held that Hampton's indictment sufficed because the indictment did allege the nature and quantity of the narcotic. *Id.* at 828 (¶5). However, the Court of Appeals indicated in

6

dicta that Hampton's reasoning had merit, stating "[t]his Court concedes the validity of Hampton's contention in the abstract that the nature and quantity of the drug involved is an essential element of the crime that must be alleged in the indictment and proven beyond a reasonable doubt at trial." *Id.* at 828 (¶4). Relying on *Hampton*, the Court of Appeals in today's case stated that "[a]lthough our caselaw on this issue primarily addresses possession and trafficking of controlled substances pursuant to Mississippi Code Annotated 41-29-139 (Supp. 2014), we see no reason why this same reasoning should not extend to possession of a controlled substance in a correctional facility pursuant to section 47-5-198." *Warren*, 2015 WL 326660, at *2. The Court of Appeals also held that the indictment's failure to identify the controlled substance had prevented Warren from preparing a defense that her possession of the controlled substance was lawful. *Id.*

¶13.    The Court of Appeals' reasoning failed to consider the differences between Section 41-29-139 and Section 47-5-198(1). Section 41-29-139 codifies several drug-related crimes, including possession and sale of various controlled substances, and includes penalties that depend on the type or amount of controlled substance involved. Miss. Code Ann. § 41-29-139 (Supp. 2015). Penalties for possession of a controlled substance with intent to distribute under Section 41-29-139 depend on the type of controlled substance allegedly possessed; penalties for simple possession are based on weight or dosage unit. *See* Miss. Code Ann. § 41-29-139(b) and (c). The differences are illustrated by *Watkins v. State*, 101 So. 3d 628 (Miss. 2012). Watkins stood convicted of possession of five separate controlled substances with intent to distribute and one count of simple possession. *Id.* at 629 (¶1). He made a

7

double-jeopardy argument that, because Section 41-29-139 did not make distinctions based on the type of controlled substance, all six charges contained the same elements and should have been charged as one offense. *Id.* at 631 (¶11). Rejecting Watkins's argument, the Court applied the test from ***Blockburger v. U.S.***, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), to Watkins's double-jeopardy claim. ***Watkins***, 101 So. 3d at 632 (¶12). Under the ***Blockburger*** test, the Court must determine whether each offense contains an element not present in the other; if not, they are the same offense for the purpose of double jeopardy. ***Id.***

¶14.    The statute applicable to Watkins's possession-with-intent charges, which all involved Schedule II drugs, stated the following:

> (a) Except as authorized by this article, it is unlawful for any person to knowingly or intentionally:
>
> (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance; or
>  . . .
>
> (b) Except as otherwise provided in subsections (f) and (g) of this section or in Section 41–29–142, any person who violates subsection (a) of this section shall be sentenced as follows:
>
> (1) In the case of controlled substances classified in Schedule I or II, as set in Sections 41–29–113 and 41–29–115, . . . such person may, upon conviction, be imprisoned for not more than thirty (30) years and shall be fined not less than Five Thousand Dollars ($5,000) nor more than One Million Dollars ($1,000,000) or both; . . . .

Miss. Code Ann. § 41-29-139 (Supp. 2015). The Court held that, under the statute, "the State was required to prove beyond a reasonable doubt that each of the six substances found in Watkins's house was in fact a controlled substance under Section 41-29-139, and that

8

Watkins had possessed and intended to sell each drug." **Watkins**, 101 So. 3d at 632 (¶13). The Court held that the indictment was required to identify the controlled substance that the defendant possessed and intended to distribute, and observed that "Mississippi courts consistently have treated possession of more than one controlled substance as multiple violations of Section 41-29-139 and separate offenses." **Id.** at 632-33 (¶¶13-14). Thus, the Court held that Section 41-29-139 makes distinctions based on the type of controlled substance allegedly possessed.

¶15.    In contrast, Section 47-5-198(1) makes no distinctions based on the type of controlled substance allegedly possessed in a correctional facility. Section 47-5-198(1) simply provides that possession of "a controlled substance or narcotic drug" in a correctional facility is unlawful, and Section 47-5-198(3) prescribes as a penalty a fine of up to $25,000 and imprisonment of not less than three years nor more than seven years. Miss. Code Ann. § 47-5-198. Neither the crime nor the penalty depends upon the type of controlled substance possessed; rather, the statute criminalizes possession of "any controlled substance" in a correctional facility. In **Marshall v. State**, 136 So. 3d 443, 445 (¶6) (Miss. Ct. App. 2013), the Court of Appeals found that an indictment for sale of cocaine under Section 41-29-139 need not specify the quantity of cocaine sold, because the penalty does not depend upon the quantity. The Court of Appeals stated:

> Under Mississippi law, "the penalty for the sale of cocaine is the same regardless of the quantity sold." **Smith v. State**, 973 So. 2d 1003, 1007 (¶ 10) (Miss. Ct. App. 2007); *see also* Miss. Code Ann. § 41-29-139(a)(1), (b)(1). Therefore, "the amount of cocaine sold is not an essential element of the crime." **Smith**, 973 So. 2d at 1007 (¶ 10) (citing **Williams v. State**, 821 So. 2d 883, 887 (¶ 16) (Miss. Ct. App. 2002)). As such, an indictment is not defective

9

> for failing to list a quantity of cocaine in the context of a sale of cocaine charge. *Id.* at 1006–07 (¶ 10). In fact, Mississippi law is clear that a quantity or amount of cocaine is not required to be listed in the indictment for a charge of sale of cocaine.

*Id.* Because neither the crime nor the penalty under Section 47-5-198(1) depends upon the identity of the controlled substance, an indictment for possession of a controlled substance in a correctional facility need not identify the controlled substance allegedly possessed. The identity of the controlled substance under Section 47-5-198(1) is not an essential element of the crime. Warren's indictment tracked the statutory language and was not fatally defective.

¶16.     We address Warren's argument before the Court of Appeals that *Brewer v. State*, 351 So. 2d 535 (Miss. 1977), and *Copeland v. State*, 423 So. 2d 1333 (Miss. 1982), require that an indictment for a drug crime must identify the controlled substance. In *Brewer*, the indictment charged Brewer with the delivery of "a certain controlled substance, to-wit: preludin." *Brewer*, 351 So. 2d at 536. Evidence at trial showed that preludin contained the Schedule II controlled substance phenmetrazine, and the trial court required the State to amend the indictment to allege that preludin contained phenmetrazine. *Id.* We held that amending the indictment had been improper because the indictment was insufficient to charge a crime. *Id.* The Court found that, because preludin was not listed as a controlled substance, "a comparison of the indictment to the criminal statute would not disclose that a crime was charged." *Id.* at 537. Similarly, in *Copeland*, the Court held that an indictment had failed to charge a crime because it had stated that Copeland had sold "a quantity of methylenedioxy amphetamine, a controlled substance," and methylenedioxy amphetamine was not a controlled substance. *Copeland*, 423 So. 2d at 1337.

10

¶17. We reject Warren's argument that ***Brewer*** and ***Copeland*** require that Warren's indictment identify the controlled substance she allegedly possessed. Both ***Brewer*** and ***Copeland*** found error because the indictments named drugs that were not controlled substances. Thus, each indictment failed to state a crime. Contrast today's case, in which Warren's indictment did not misidentify a drug but charged her with possession of a controlled substance in a correctional facility. Under Section 47-5-198(1), the State's proof beyond a reasonable doubt that Warren, without authority of law, possessed any controlled substance in a correctional facility would result in a conviction. Requiring the State to identify in the indictment the controlled substance allegedly possessed under Section 41-5-198(1) would narrow the reach of the statute, because proof that a defendant possessed a controlled substance other than that named in the indictment would result in an acquittal, although the statute proscribes possession of "any controlled substance." Miss. Code Ann. § 41-5-198(1) (Rev. 2014).

¶18. The Court also rejects Warren's argument that her defense was prejudiced by the failure to specify the controlled substance in the indictment. As we have held, the identity of the controlled substance under Section 41-5-198(1) is not an essential element of the crime, and the fact that Warren's indictment did not identify the controlled substance was not prejudicial to her defense.

¶19. Finally, we observe that the identity of the controlled substance is subject to mandatory discovery under Uniform Rule of Circuit and County Court Practice 9.04(A). Rule 9.04 mandates that the State disclose to the defendant:

11

(1) . . . . a copy of the contents of any statement, written, recorded or otherwise preserved of each such witness and the substance of any oral statement made by any such witness;

(2) Copy of any written or recorded statement of the defendant and the substance of any oral statement made by the defendant;

(4) Any reports, statements, or opinions of experts, written, recorded or otherwise preserved, made in connection with the particular case and the substance of any oral statement made by any such expert;

(5) Any physical evidence and photographs relevant to the case or which may be offered in evidence . . . .

URCCC 9.04. Warren admitted that the State had provided her with the crime lab's test results in discovery.

II. THE TRIAL COURT DID NOT ERR BY DENYING WARREN'S MOTION TO SUPPRESS SMITH'S TESTIMONY FOR DISCOVERY VIOLATIONS.

¶20.   Warren filed a motion for discovery requesting the mandatory Rule 9.04(A) disclosures and other information. Before trial, Warren moved to suppress Smith's testimony and the crime lab test results; the trial court denied the motion. On appeal, Warren argues that the trial court should have suppressed Smith's testimony and the crime lab test results due to a discovery violation. Warren claims that the State violated the mandatory disclosure requirement of Rule 9.04 by failing to produce Smith's certification or the crime lab's accreditation, policies, controls, protocols, and procedures.

¶21.   Warren's motion to suppress argued that Smith's potential use as a witness and the crime lab test results had not been disclosed at the appropriate time. Further, Warren argued that the testimony and test results were unreliable and inadmissible because the State had not

submitted documentation showing that Smith and the crime lab held the proper accreditations. After a hearing, the trial court denied the motion to suppress, finding that Warren could voir dire Smith on his qualifications to testify under Mississippi Rule of Evidence 702.

¶22. We hold that the issue lacks merit. Smith's curriculum vitae and the crime lab's certification and protocols were not within the scope of Warren's discovery requests or required discovery under Rule 9.04(A). Warren's motion for discovery did not request any background information on the experts or the crime lab. Citing ***Ramos v. State***, 710 So. 2d 380 (Miss. 1998), Warren argues that the State was required to disclose all the information in its files. Indeed, ***Ramos*** stated that prosecuting attorneys "should make available to attorneys for defendants all . . . material[s] . . . and let the defense attorneys determine whether or not the material is useful in the defense of the case." ***Id.*** at 386 (¶27) (quoting ***Hentz v. State***, 489 So. 2d 1386 (Miss. 1986)). Warren fails to show that the State had the materials in its possession and withheld them. While "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution," ***Brady v. Maryland***, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the defendant first must show that the government possessed evidence favorable to the defendant. ***King v. State***, 656 So. 2d 1168, 1174 (Miss. 1995).

> III. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY FINDING THAT SMITH WAS QUALIFIED TO RENDER EXPERT TESTIMONY.

¶23. The trial court found Smith qualified to testify in the field of drug analysis and identification based on his training, education, and experience under Mississippi Rule of Evidence 702. Warren objected to the ruling. She argues on appeal that the trial court erred by finding that Smith was qualified to testify.

¶24. Mississippi Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

M.R.E. 702. The Supreme Court reviews a trial court's admission of expert testimony for abuse of discretion. *Galloway v. State*, 122 So. 3d 614, 660 (¶148) (Miss. 2013). A ruling that a witness was qualified to give expert testimony is within the trial court's sound discretion and will not be reversed unless it was arbitrary and clearly erroneous. *Id.*

¶25. Warren argues that the trial court abused its discretion by finding Smith qualified because, during voir dire, he never testified that his methods were generally accepted in the scientific community or that his work was subject to peer review. Warren complains that Smith admitted he was not certified by the American Board of Criminalistics, the only entity in the United States that certifies crime lab analysts. Also, Smith did not produce his certificate for attending an FBI course. Warren points to Smith's testimony that he was not certified by the Mississippi Crime Laboratory and his admission that the Columbus Crime Laboratory was not accredited by the American Society of Crime Lab Directors (ASCLD)

and was not required to follow the ASCLD guidelines known as the ISO/IEC 17025.

¶26.    The voir dire record shows that Smith worked as the director of forensic chemistry at the Columbus Forensic Laboratory for five years. In February 2013, he left that employment to work as a shift supervisor for the Columbus Police Department.  At the lab, Smith's sole duty was to analyze and determine the content of submitted evidence for drug identification. He had a bachelor's degree in biology and chemistry from the University of Southern Mississippi, attended and completed a course at the FBI Academy in forensic mass spectrometry, and completed a Drug Enforcement Administration (DEA) drug chemist course.  He also completed forensic drug analysis coursework through the West Virginia University and coursework with Thermo Fisher Scientific in Madison, Wisconsin.  The coursework involved use of the gas chromatograph mass spectrometer, which Smith testified is the "gold standard for the identification of unknown compounds."  Smith was certified to operate testing instruments including the gas chromatograph mass spectrometer, and he had tested more than 25,000 samples during his five years with the lab.  Given Smith's education, experience, and training in drug analysis, we discern no abuse of discretion in the trial court's finding that Smith was qualified to testify.

¶27.    Warren also argues that the trial court should not have allowed Smith's testimony about the test results because the State had failed to show that the Columbus Crime Laboratory is a court-approved laboratory.  As support, Warren cites *Barnette v. State*, 481 So. 2d 788, 792 (Miss. 1985), in which the Court stated "we hold that a crime laboratory established by the Commissioner of Public Safety pursuant to Mississippi Code Annotated

15

§ 45-1-17 (1972) is a 'court-approved laboratory' for the purpose of § 13-1-114(1)(b)."

Warren argues that ***Barnette*** stands for the proposition that drug test results may be admitted only from a court-approved laboratory under Mississippi Code Section 13-1-114(1)(b). The problem with Warren's argument is that Section 13-1-114 was repealed in 1991. 1991 Miss. Laws, ch. 573, § 141. Therefore, while Section 13-1-114 stated that a certificate of analysis identifying a controlled substance was admissible only if the analysis was performed in a court-approved laboratory, that statute has been repealed and is no longer in force. ***Barnette***, 481 So. 2d at 791; 1991 Miss. Laws, ch. 573, § 141. We hold that the trial court properly ruled on Smith's qualifications by applying Mississippi Rule of Evidence 702.

¶28. Additionally, Warren makes a one-sentence argument that the admission of Smith's testimony violated her right of confrontation under the Sixth Amendment to the United States Constitution because the State did not provide a foundation for Smith's qualifications. The Confrontation Clause bars admission of testimonial statements by a witness who did not testify at trial unless the witness was unavailable and the defendant had a prior opportunity for cross-examination. ***Conners v. State***, 92 So. 3d 676, 683 (¶16) (Miss. 2012) (citing ***Crawford v. Washington***, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)). Because Smith did testify at trial, Warren's right of confrontation was not violated.

> IV. THE TRIAL COURT DID NOT ERR BY DENYING WARREN'S MOTIONS FOR A DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING THE VERDICT, OR A NEW TRIAL.

¶29. Warren challenged the sufficiency of the evidence with her motion for a directed verdict at the end of the State's case, and later in her post-trial motion for judgment

16

notwithstanding the verdict (JNOV). "On review of the sufficiency of the evidence, this Court considers the trial court's ruling at the last time the sufficiency of the evidence was challenged." *Wales v. State*, 73 So. 3d 1113, 1120 (¶19) (Miss. 2011). Accordingly, we review the trial court's denial of Warren's motion for JNOV.

¶30. In reviewing the denial of a motion for JNOV, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The Supreme Court must reverse and render if the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." *Bush*, 895 So. 2d at 843 (¶16) (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)). If the evidence was of such quality and weight that, applying the burden of proof of beyond a reasonable doubt, "reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," then the Court will affirm. *Bush*, 895 So. 2d at 843 (¶16) (quoting *Edwards*, 469 So. 2d at 70).

¶31. Under Section 47-5-198(1), "it is unlawful for any person to sell within, bring to, or be in possession of, in any correctional facility . . . any controlled substance . . . ." Miss. Code Ann. § 47-5-198(1) (Rev. 2015). Warren's indictment charged her with "wilfully, unlawfully, feloniously, and knowingly or intentionally" bringing to or possessing a

17

controlled substance in the Winston Choctaw County Correctional Facility in violation of Section 47-5-198(1). The State presented evidence that, when Warren was visiting a correctional facility, a corrections officer searched her and discovered a plastic bag that contained eight pills concealed inside the waistband of her pants. Warren told the warden that the pills were Lortab and Xanax. The analyst who tested the pills at the Columbus Crime Laboratory testified that the pills contained Lortab and Xanax, both controlled substances. A reasonable jury could infer from Warren's concealment of the pills on her person and her statement to the warden that she knew the pills contained controlled substances that she knowingly brought them into a correctional facility. Considering the evidence in the light most favorable to the verdict, the evidence was sufficient to enable a reasonable jury to find Warren guilty of the indicted offense.

¶32. Warren also attacked the weight of the evidence by filing a motion for a new trial, which was denied by the trial court. When reviewing a challenge to the weight of the evidence, the Court will not overturn a verdict unless it "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). A motion for a new trial "is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Bush*, 895 So. 2d at 844 (¶18) (quoting *Amiker v. Drugs for Less, Inc.*, 796 So. 2d 942, 947 (¶18) (Miss. 2000)). The court must weigh the evidence in the light most favorable to the verdict. *Bush*, 895 So. 2d at 844 (¶18).

18

¶33. The evidence presented at Warren's trial preponderated in favor of the verdict, not against it. The State showed that, during Warren's visit to a correctional facility, a corrections officer discovered a bag of pills hidden in the waistband of Warren's pants, that Warren identified the pills as Lortab and Xanax, and that testing revealed the pills found on Warren to be Lortab and Xanax, both controlled substances. We hold that the verdict was not against the overwhelming weight of the evidence.

## V. BECAUSE NO ERRORS OCCURRED AT WARREN'S TRIAL, THERE WAS NO CUMULATIVE ERROR.

¶34. Warren argues that errors occurred at her trial that, considered cumulatively, constitute reversible error. "Under the cumulative-error doctrine, individual harmless errors may be aggregated with other errors to create reversible error 'where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial.'" *Osborne v. State*, 54 So. 3d 841, 848 (¶27) (Miss. 2011). We have identified no errors in Warren's trial. Because "where there is no error in part, there can be no reversible error to the whole," the issue is without merit. *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007).

## CONCLUSION

¶35. We hold that Warren's appellate issues are without merit. Warren's indictment sufficed to charge her with possession of a controlled substance in a correctional facility. Warren's argument that the trial court should have suppressed Smith's testimony due to a discovery violation is without merit. The trial court did not abuse its discretion by finding that Smith was qualified to testify. The evidence sufficed to support the verdict, and the verdict was not against the overwhelming weight of the evidence. Finally, because the Court

19

has discerned no error, there can be no cumulative error. The judgment of the Court of Appeals is reversed, and the judgment of the Circuit Court of Winston County is reinstated and affirmed.

¶36. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE IN A CORRECTIONAL FACILITY AND SENTENCE OF SEVEN (7) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOUR (4) YEARS SUSPENDED AND FIVE (5) YEARS ON SUPERVISED PROBATION, WITH CONDITIONS, IS REINSTATED AND AFFIRMED. THE SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVELY TO ANY SENTENCE PREVIOUSLY IMPOSED. APPELLANT SHALL PAY A FINE IN THE AMOUNT OF $1,000 AND ALL COURT COSTS AND ASSESSMENTS. THESE AMOUNTS ARE TO BE PAID TO THE CIRCUIT CLERK OF WINSTON COUNTY, MISSISSIPPI, AT THE RATE OF $100 PER MONTH WITH THE FIRST PAYMENT BEING PAID WITHIN THIRTY (30) DAYS OF RELEASE FROM INCARCERATION. THIS SUM IS TO BE PAID EACH MONTH UNTIL IT IS PAID IN FULL.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR AND BEAM, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. MAXWELL, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶37. Because Shirley Warren was deprived of her federal and state constitutional rights to notice of the nature and cause of the accusation against her, I respectfully dissent. I would hold that an indictment under Mississippi Code Section 47-5-198(1) for possession of a controlled substance in a correctional facility must identify the controlled substance that the defendant allegedly possessed. Because Warren's indictment omitted this information, she lacked notice of an essential fact of the offense that could have enabled her to defend the charge on the ground that her possession of the controlled substances was authorized by law. *See* Miss. Code Ann. 47-5-198(1) (Rev. 2015).

20

¶38. The Sixth Amendment to the United States Constitution guarantees the accused the right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. The Mississippi Constitution provides that "the accused shall have a right . . . to demand the nature and cause of the accusation." Miss. Const. art 3, § 26. Uniform Rule of Circuit and County Court Practice 7.06 requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Under this rule, an indictment also must "fully notify the defendant of the nature and cause of the accusation." URCCC 7.06. This Court has held that a sufficient indictment contains "(1) the essential elements of the crime charged, (2) sufficient facts to fairly inform the defendant of the charge which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Hardy v. State*, 137 So. 3d 289, 301 (Miss. 2014). The ultimate test of an indictment's validity is whether the defendant was prejudiced in preparing her defense. *Medina v. State*, 688 So. 2d 727, 730 (Miss. 1996).

¶39. Warren was indicted for violating Mississippi Code Section 47-5-198(1), which provides that "[i]t is unlawful for any person to sell within, bring to, or be in possession of, in any correctional facility or convict camp within the state or any county, municipal or other jail within the state, except as authorized by law, any controlled substance or narcotic drug." Miss. Code Ann. § 47-5-198(1) (Rev. 2015). Warren's indictment for violating Section 47-5-198(1) did not identify the controlled substance she allegedly possessed. It simply stated that Warren had possessed "a controlled substance" in the Winston-Choctaw Regional Correctional Facility.

21

¶40. The majority writes that an indictment that simply tracks the statute generally will be held to provide sufficient notice. But this ignores the requirement that, in addition to listing the essential elements of the crime, an indictment must contain sufficient facts to inform the defendant fairly of the charge against which she must defend, and must be specific enough to enable her to plead double jeopardy if she is prosecuted for the same offense in the future. *Hardy*, 137 So. 3d at 301. The majority finds that, because Section 47-5-198(1) proscribes possession of any controlled substance in a correctional facility, and neither the crime nor the penalty depends upon the specific controlled substance possessed, it is unnecessary for the State to identify the controlled substance in the indictment. I cannot agree. Under Section 47-5-198(1), possession of a controlled substance in a correctional facility is not illegal if the possession is "authorized by law." Miss. Code Ann. § 47-5-198(1) (Rev. 2014). As Warren argued during a pretrial hearing, if she undertook to prepare a prescription defense or other defense that she had legal authority for the possession, she would have been unable to do so without knowing the specific controlled substance that the State would attempt to prove she possessed.

¶41. A defendant charged with possession of a controlled substance in a correctional facility cannot prepare a defense that the possession was authorized by law without knowing the identity of the controlled substance the State will attempt to prove the defendant possessed. State and federal law are replete with examples of substances defined as controlled. Mississippi's Uniform Controlled Substances Law lists more than 350 individual substances classified as controlled substances. Miss. Code Ann. §§ 41-29-113-121 (Rev.

22

2013). A defendant charged with possession of a controlled substance in a correctional facility should not be forced to guess which substance or substances out of hundreds the State will attempt to prove the defendant possessed. And, while the majority relies on the fact that the identity of the controlled substance is subject to mandatory discovery under Uniform Rule of Circuit and County Court Practice 9.04(A), discovery is no substitute for constitutionally sufficient notice in the indictment. That is especially evident in this case, in which Warren filed a motion to suppress the crime laboratory's test results identifying the drugs on the basis of late disclosure by the State.

¶42.    I would hold that, because the indictment did not identify the controlled substance which Warren allegedly possessed, she did not receive constitutionally sufficient notice of the nature and cause of the accusation against her. A defendant charged with a violation of Section 47-5-198(1) must be notified of the identity of the controlled substance to defend the charge. Because Warren's indictment was fatally defective, I would reverse and render Warren's conviction for possession of a controlled substance in a correctional facility.

**KING, J., JOINS THIS OPINION.**