# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01151-COA

**MICHAEL FITZGERALD THOMAS A/K/A MICHAEL THOMAS A/K/A MICHAEL F. THOMAS**                                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/30/2023 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | WILLIAM CROSBY PARKER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/02/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.    Michael Thomas was convicted of possession of a firearm by a felon (Count I), trafficking a Schedule I controlled substance (Count II), and two counts of simple possession of Schedule II controlled substances (Counts III and IV). Thomas's only argument on appeal is that Count II of his indictment was defective and failed to charge a crime. For the reasons discussed below, we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    On August 6, 2019, the Gulfport Police Department executed a search warrant on

storage units Thomas rented. Police recovered substances suspected to be synthetic cannabinoids, methamphetamine, and hydrocodone, as well as digital scales and eleven guns. Thomas was interrogated, admitted that the drugs and guns were his, and confessed to selling "spice." Testing by the Mississippi Forensics Laboratory determined that the drugs seized included at least 208.50 grams of "Fluoro MDMB-PICA" or "spice," 0.76 grams of methamphetamine, and four Hydrocodone and Acetaminophen tablets.

¶3. A Harrison County grand jury indicted Thomas for possession of a firearm as a felon (Count I); trafficking "SYNTHETIC CANNABINOIDS, to-wit: FLUORO MDMB-PICA, a Schedule I Controlled Substance" (Count II); possession of Hydrocodone (Count III); and possession of methamphetamine (Count IV).[1] Thomas was indicted as a nonviolent habitual offender. Following a jury trial, Thomas was convicted of all counts. The trial court sentenced Thomas to concurrent terms of eight years (Count I), thirteen years (Count II), three years (Count III), and three years (Count IV) to be served day-for-day as a nonviolent habitual offender in the custody of the Department of Corrections.

¶4. Thomas filed a motion for judgment notwithstanding the verdict or a new trial but never requested a hearing on the motion. The motion was denied by operation of law, *see* MRCrP 25.3, and subsequent order of the trial court. Thomas failed to file a notice of appeal, but the trial court granted his post-conviction motion for an out-of-time appeal, *see* Miss. Code Ann. § 99-39-5(1)(i) (Rev. 2020), and Thomas then filed a notice of appeal. On

---

[1] The grand jury returned a six-count indictment. After two counts were dismissed, the trial court entered an agreed order amending the indictment to renumber the remaining counts. This opinion refers to the counts of the indictment as amended/renumbered.

appeal, Thomas does not challenge his convictions of Counts I, III, and IV. Thomas only argues that Count II of his indictment was defective and failed to allege a crime.

**ANALYSIS**

¶5. Count II of Thomas's indictment alleged that on or about August 6, 2019, Thomas "knowingly . . . possess[ed] 200 grams or more of SYNTHETIC CANNABINOIDS, to-wit: FLUORO MDMB-PICA, a Schedule I Controlled Substance, with the intent to transfer or distribute." At trial, Laura Fulks, a forensic scientist at the Mississippi Forensics Laboratory, testified that the substance in question was "Fluoro MDMB-PICA," a "synthetic cannabinoid" "also known as spice" that is a "Schedule I" controlled substance. She testified that "the total net weight of [the] spice" was 208.50 grams.

¶6. In his initial brief on appeal, Thomas argued that Count II of his indictment was defective and failed to charge a crime because "FLUORO MDMB-PICA" was not listed in Mississippi Code Annotated section 41-29-113(d)(55) (Supp. 2019), which provides that various "synthetic cannabinoids," as defined by the statute, are Schedule I controlled substances. In response, the State argued that Count II was sufficient because "FLUORO MDMB-PICA" is listed in the statute under a different name, "5F-MDMB-PICA." Miss. Code Ann. § 41-29-113(d)(61) (Rev. 2023).

¶7. However, we noted a problem with the State's argument: the Mississippi Legislature did not add subsection (d)(61) listing "5F-MDMB-PICA" as a Schedule I controlled substance under Mississippi law until *July 1, 2023*, four years after Thomas's offense. *See*

3

2023 Miss. Laws ch. 414, § 1.[2] We ordered the parties to file supplemental briefs addressing this issue.

¶8.     In its supplemental brief, the State took a different tack, arguing that the substance in question is covered by the first paragraph of subsection (d)(55), which provides that "synthetic cannabinoids" are Schedule I controlled substances and defines synthetic cannabinoids as follows:

> Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of a synthetic cannabinoid found in any of the following chemical groups, whether or not substituted to any extent, or any of those groups which contain any synthetic cannabinoid salts, isomers, or salts of isomers, whenever the existence of such salts, isomers, or salts of isomers is possible within the specific chemical designation, including all synthetic cannabinoid chemical analogues in such groups . . . .

Miss. Code Ann. § 41-29-113(d)(55) (Supp. 2019). The statute then lists thirteen different chemical groups of synthetic cannabinoids. The State argues that Thomas's indictment sufficiently alleged that he possessed "synthetic cannabinoids" and that the State proved Thomas's guilt at trial through Fulks's testimony that the substance was tested and was, in fact, "synthetic cannabinoids" and a "Schedule I controlled substance."

¶9.     This Court addressed a somewhat similar issue in *Qasoon v. State*, 232 So. 3d 831,

---

[2] We noted that the Federal Drug Enforcement Agency had previously added "5F-MDMB-PICA" to Schedule I under the Federal Controlled Substances Act on a temporary basis in April 2019 and on a permanent basis in April 2022. *See* Schedules of Controlled Substances: Temporary Placement of 5F-EDMB-PINACA, 5F-MDMB-PICA, FUB-AKB48, 5F-CUMYL-PINACA, and FUB-144 into Schedule I, 84 Fed. Reg. 15,505 (Apr. 16, 2019); Schedules of Controlled Substances: Placement of 5F-EDMB-PINACA, 5F-MDMB-PICA, FUB-AKB48, 5F-CUMYL-PINACA, and FUB-144 in Schedule I, 87 Fed. Reg. 20,318 (Apr. 7, 2022).

834-35 (¶¶7-13) (Miss. Ct. App. 2017).  There, the indictment alleged that the defendant sold "AB-FUBINACA, a Schedule I controlled substance . . . , in violation of Sections 41-29-139 and 41-29-113(c)(L) of the Mississippi Code."  *Id.* at 834 (¶8) (brackets and footnote omitted).  We noted that the indictment included an apparent scrivener's error: it omitted part of the second Code section and should have referred to section 41-29-113(c)(55)(L) (Supp. 2014), which described a chemical group of synthetic cannabinoids.  *See id.* at 834-35 (¶13) & nn.2-3.   The  defendant  argued  that  the  indictment  was  defective  because  "AB-FUBINACA" was not listed in the statute by name.  *Id.* at (¶10).  However, we emphasized that "the purpose of the indictment is to provide the accused reasonable notice of the charges against him so that he may prepare an adequate defense."  *Id.* at 835 (¶12) (brackets omitted) (quoting *Warren v. State*, 187 So. 3d 616, 621 (¶10) (Miss. 2016)).  And we held that the indictment was legally sufficient because "AB-FUBINACA" was a recognized "code name" for a synthetic cannabinoid, because it was "apparent" from the record that the defendant's "defense was not prejudiced," and because the indictment identified, "albeit imperfectly," the specific Code subsection involved.  *Id.* at 835 (¶¶11-13).

¶10.    For similar reasons, we conclude that Thomas's indictment was also legally sufficient. As in *Qasoon*, Thomas's indictment provided a recognized name of the substance he was charged with possessing, albeit not a name yet specifically listed in the statute.  In addition, there is nothing to suggest there was any confusion regarding the type of controlled substance Thomas was charged with possessing (synthetic cannabinoids) or that Thomas's defense was prejudiced in any way.  Finally, although the indictment did not expressly refer to a specific

5

subsection of section 41-29-113, it alleged that Thomas possessed "synthetic cannabinoids," which was a clear reference to subsection (d)(55). Consistent with our decision in *Qasoon*, we conclude that Thomas's indictment alleged a crime—trafficking of "synthetic cannabinoids," a Schedule I controlled substance. *See* Miss. Code Ann. § 41-29-113(d)(55) (Supp. 2019). Moreover, the indictment provided Thomas with "reasonable notice of the charges against him so that he [could] prepare an adequate defense." *Qasoon*, 232 So. 3d at 835 (¶12) (brackets omitted) (quoting *Warren*, 187 So. 3d at 621 (¶10)).

¶11.    On appeal, Thomas relies on *Payne v. State*, 282 So. 3d 432 (Miss. Ct. App. 2019), and *Hathorne v. State*, 376 So. 3d 1209 (Miss. 2023). In *Payne*, the indictment charged Payne with possession of "ETHYLONE, a SCHEDULE I Controlled Substance." *Payne*, 282 So. 3d at 437 (¶18). At trial, a forensic scientist "testified that ethylone is a Schedule I controlled substance that has 'many names,' including 'methylenedioxymethcathinone' and 'beta keto MDEA.'" *Id.* However, this Court emphasized that "'ethylone' is not listed in Schedule I of the Controlled Substances Act—nor are the other two names [the scientist] gave." *Id.* We held that because—even after trial—it remained "unclear exactly what controlled substance Payne possessed," we were bound to reverse his conviction for possession of "ethylone." *Id.* at 438 (¶19). In *Hathorne*, the Supreme Court adopted *Payne*'s analysis and held that another indictment alleging possession of "ethylone" was defective because the evidence failed to connect "ethylone" to any part of the list of Schedule I controlled substances. *See Hathorne*, 376 So. 3d at 1212 (¶¶8-10).

¶12.    *Payne* and *Hathorne* are distinguishable from this case because Thomas's indictment

6

specifically charged him with possession of "SYNTHETIC CANNABINOIDS," "a Schedule I Controlled Substance." Unlike "ethylone," *synthetic cannabinoids are specifically listed in Schedule I.* Miss. Code Ann. § 41-29-113(d)(55) (Supp. 2019). Moreover, consistent with the indictment, Fulks testified at trial that the substance Thomas possessed was "synthetic cannabinoids," a "Schedule I controlled substance." Accordingly, we conclude that *Payne* and *Hathorne* are distinguishable and that Thomas's indictment was not defective.

¶13. The separate opinion agrees that Thomas's indictment charged a crime and was not defective, that *Hathorne* is distinguishable, and that the conviction must be affirmed. Nonetheless, the separate opinion states there is a "better path" to this result. While there does not seem to be much difference between the separate opinion and this one, the gist of the separate opinion seems to be that a controlled substance's scheduling or chemical makeup is somehow less important in a prosecution for trafficking than in a prosecution for possession. This is a misreading of the trafficking statute.

¶14. The crimes of trafficking, transfer and possession with intent to transfer, and simple possession are all defined in Mississippi Code Annotated section 41-29-139. The trafficking statute provides in relevant part:

> (f) **Trafficking.** (1) Any person trafficking in controlled substances shall be guilty of a felony . . . .
>
> (2) "Trafficking in controlled substances" as used herein means:
>
>> (A) A violation of subsection (a) of this section [(i.e., transfer and possession with intent to transfer)] involving thirty (30) or more grams or forty (40) or more dosage units of a Schedule I or II controlled substance except marijuana and synthetic cannabinoids;

7

(B) A violation of subsection (a) of this section involving five hundred (500) or more grams or two thousand five hundred (2,500) or more dosage units of a Schedule III, IV or V controlled substance;

(C) A violation of subsection (c) of this section [(i.e., simple possession)] involving thirty (30) or more grams or forty (40) or more dosage units of a Schedule I or II controlled substance except marijuana and synthetic cannabinoids;

(D) A violation of subsection (c) of this section involving five hundred (500) or more grams or two thousand five hundred (2,500) or more dosage units of a Schedule III, IV or V controlled substance; or

(E) A violation of subsection (a) of this section involving one (1) kilogram or more of marijuana or two hundred (200) grams or more of synthetic cannabinoids.

Miss. Code Ann. § 41-29-139(f) (Rev. 2023).  Thus, each of the five variants of trafficking requires the State to prove a "violation of subsection (a)" (transfer or possession with intent to transfer) or "subsection (c)" (simple possession) involving specified quantities of certain categories of controlled substances.  Because subsection (f) (trafficking) requires the State to prove a violation of subsection (a) or (c) *plus an additional element*, it cannot possibly require lesser proof than subsection (a) or (c).  Trafficking is essentially an aggravated form of a violation of subsection (a) or (c).

¶15.   Moreover, the fact that subsection (f) references "controlled substances" and "synthetic cannabinoids" does not make a substance's scheduling or chemical makeup any less important than under subsection (a) or (c).  Under the Controlled Substances Law, "'[c]ontrolled substance' means a drug, substance or immediate precursor in Schedules I through V of Sections 41-29-113 through 41-29-121."  Miss. Code Ann. § 41-29-105(f) (Rev. 2023).  Thus, to prove trafficking, the State clearly must show that the substance is

listed in one of the five statutory Schedules. In addition, subsection (f) requires the State to prove more specifically that the offense involved specified quantities of "a Schedule I or II controlled substance except marijuana and synthetic cannabinoids," "a Schedule III, IV or V controlled substance," or "marijuana or . . . synthetic cannabinoids." Miss. Code Ann. § 41-29-139(f)(2)(A)-(E).

¶16. Subsection (f)'s grouping of multiple Schedules together is not unique to subsection (f)—*subsections (a) and (c) do the same thing*. For example, subsection (c)(1) (simple possession) applies to any "controlled substance classified in Schedule I *or* II, except marijuana and synthetic cannabinoids." *Id.* § 41-29-139(c) (emphasis added). Similarly, subsection (c)(2) (simple possession) applies to "[m]arijuana and synthetic cannabinoids." *Id.* The other provisions applicable to simple possession and transfer or possession with intent to transfer similarly mirror the provisions of subsection (f) regarding trafficking. *See id.* § 41-29-139(b)(1)-(4) (setting separate punishment schedules for violations of "subsection (a)" for "controlled substances classified in Schedule I or II . . . other than marijuana or synthetic cannabinoids," "marijuana," "synthetic cannabinoids," "controlled substances classified in Schedules III and IV," and "controlled substances classified in Schedule V," respectively); *id.* § 41-29-139(c)(3) (setting a separate punishment schedule for violations of subsection (c) for "Schedule III, IV or V" controlled substances). Again, subsection (f)'s grouping of multiple Schedules is not unique.

¶17. The separate opinion suggests that our opinion in *McFarland v. State*, 297 So. 3d 1110 (Miss. Ct. App. 2020), illustrates something unique about subsection (f). It does not.

9

In *McFarland*, the indictment charged the defendant with trafficking cocaine but erroneously referred to cocaine as a "Schedule I controlled substance" rather than a Schedule II controlled substance. *Id.* at 1116 (¶20). We pointed out that the error did not matter because section 41-29-139(f)(2)(C) applies to any "Schedule I *or* II controlled substance" except marijuana and synthetic cannabinoids. *Id.* at 1117 (¶25). This result was not unique to trafficking. The result would have been the same under either subsection (a) (transfer or possession with intent to transfer) or subsection (c) (simple possession), which respectively carry punishments applicable to "controlled substances classified in Schedule I *or* II . . . other than marijuana or synthetic cannabinoids," Miss. Code Ann. § 41-29-139(b)(1) (emphasis added), and "controlled substance[s] classified in Schedule I *or* II, except marijuana and synthetic cannabinoids," *id.* § 41-29-139(c)(1) (emphasis added).

¶18. Lastly, as relevant to this case, subsection (f) punishes the transfer or possession with intent to transfer "two hundred (200) grams or more of synthetic cannabinoids." *Id.* § 41-29-139(f)(2)(E). Granted, this particular provision does not expressly cross-reference Schedule I (Miss. Code Ann. § 41-29-113). But there is no such thing as "synthetic cannabinoids" in the abstract. A defendant cannot be convicted of trafficking "synthetic cannabinoids" just because law enforcement or a district attorney subjectively considers a substance to be a synthetic cannabinoid. Rather, "synthetic cannabinoids" are the substances *defined in Schedule I*—more specifically, section 41-29-113(d)(55). Therefore, just as in a prosecution under subsection 41-29-139(a) or (c), in order to obtain a conviction for this type of trafficking, the State must prove that the defendant possessed "synthetic cannabinoids," as

10

listed and within the meaning of Schedule I, Miss. Code Ann. § 41-29-113(d)(55). With respect to the scheduling and chemical makeup of the substance involved, *there is no difference between a prosecution for trafficking and a prosecution for transfer, possession with intent, or simple possession*. Thomas's indictment charged a crime not because there is some lower standard for trafficking indictments. Rather, Thomas's indictment charged a crime—trafficking—because it properly alleged that he possessed at least 200 grams of synthetic cannabinoids with the intent to transfer.[3]

¶19. **AFFIRMED.**

**BARNES, C.J., LAWRENCE, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR. McDONALD AND WEDDLE, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, McDONALD AND WEDDLE, JJ.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶20. While I agree with the result ultimately reached by the majority, I believe there is a better path that is more consistent with the recent approach of our Supreme Court. The indictment here sufficiently identified the elements for "trafficking a controlled substance"

---

[3] This is why the case is distinguishable from *Hathorne*, 376 So. 3d at 1212 (¶¶8-10). If Hathorne had been indicted for possession of "synthetic cannabinoids, a Schedule I controlled substance," his indictment would have charged a crime—just as in this case. If Thomas had been indicted for trafficking "ethylone," his indictment would have failed to charge a crime—just as in *Hathorne*. The difference between this case and *Hathorne* is in the language of the respective indictments describing (or failing to describe) a listed controlled substance. The difference is *not* that *Hathorne* involved possession while this case involves trafficking.

11

involving a substance alleged to be a "synthetic cannabinoid." Because trafficking charges focus on the *weight* of the prohibited substance rather than the specific chemical make-up, Thomas's indictment was not fatally defective for the listed chemical compound. Instead, the use of the phrase "FLUORO MDMB-PICA" was merely surplusage.

¶21.    Count II of Thomas's indictment charged:

> TRAFFICKING OF A CONTROLLED SUBSTANCE
> Section 41-29-139(f), Miss. Code of 1972, as amended. . . . THOMAS . . . did knowingly, willfully, unlawfully and feloniously possess 200 grams or more of SYNTHETIC CANNABINOIDS, to-wit: FLUORO MDMB-PICA, a Schedule I Controlled Substance, with the intent to transfer or distribute the said controlled substance, a violation of section 41-29-139(a)(1) . . . .

¶22.    At the time of his indictment and conviction, Mississippi Code Annotated section 41-29-139(f), titled "Trafficking," provided:

> (1) Any person trafficking in controlled substances shall be guilty of a felony and, upon conviction, shall be imprisoned for a term of not less than ten (10) years nor more than forty (40) years. . . .
>
> (2) "Trafficking in controlled substances" as used herein means:
>       . . . .
>
>       (E) A violation of subsection (a) of this section involving one (1) kilogram or more of marijuana or two hundred (200) grams or more of *synthetic cannabinoids*.

Miss. Code Ann. § 41-29-139(f) (Supp. 2016 & Supp. 2022) (emphasis added). A plain reading shows that section 41-29-139(f) includes the broad language of "controlled substances." The language of subsection (f)(2)(E) then makes a similar reference generically to "synthetic cannabinoids."[4]

---

[4] In contrast, section 41-29-139(f)(2)(A) includes the language "Schedule I or II" and does so *to the exclusion of* "synthetic cannabinoids." *See* Miss. Code Ann. § 41-29-139(f)

¶23. Taken together, a violation of the trafficking statute occurs in instances of (1) "knowingly or intentionally . . . transfer, . . . distribute, . . . or possess with intent to . . . transfer . . . [or] distribute" (2) "a controlled substance" in instances "involving . . . two hundred (200) grams or more of synthetic cannabinoids." Miss. Code Ann. § 41-29-139(f).[5]

¶24. The majority relies heavily on *Qasoon v. State*, 232 So. 3d 831 (Miss. Ct. App. 2017), but it is not factually applicable here. The indictment there charged that the defendant "did willingly, unlawfully, and feloniously and knowingly sell, barter, transfer, distribute or dispense approximately 7.90 gram(s) of AB–FUBINACA, a Schedule I controlled substance . . . in violation of Sections 41-29-139" **and** "41-29-113(c)(L)[.]" *Id*. at 834 (¶8).

¶25. On appeal, the defendant "contend[ed] that his indictment was insufficient because it alleged possession of 'AB–FUBINACA,' rather than the chemical description applicable to the compound given in Schedule I[,]" and "fail[ed] to sufficiently charge the defendant

---

(Supp. 2016) ("A violation of subsection (a) of this section involving thirty (30) or more grams or forty (40) or more dosage units of a Schedule I or II controlled substance except marijuana and synthetic cannabinoids").

It is further interesting to note that trafficking under section 41-29-139(f) is separated and distinguished from "aggravated trafficking" pursuant to section 41-29-139(g). Unlike the type of trafficking criminalized in subsection (f), aggravated trafficking as provided under subsection (g) includes in its terms "trafficking in *Schedule I or II* controlled substances, except . . . synthetic cannabinoids." Miss. Code Ann. § 41-29-139 (emphasis added).

[5] It is "the Legislature's prerogative is to define crimes and set the punishment for offenders, and this prerogative is given great latitude." *Faraga v. State*, 514 So. 2d 295, 302 (Miss. 1987). In accordance with this latitude, the Legislature has the prerogative to criminalize trafficking separately and differently than crimes of possession—regulating trafficking by the *general grouping* of drugs, whereas possession is regulated according to the *specific chemical compounding* of drugs. Section 41-29-139(f) does not independently contain a requirement to prove a set of specific chemical compounds of controlled substances (i.e., specific synthetic cannabinoid chemical compounds).

with notice of what substance he [was] charged with possessing." *Id*. at (¶¶7, 10). It was further argued that "[t]he indictment pointed Qasoon to '§ 41-29-113(c)(L)' of the Mississippi Code, which does not exist," and "omitted the '(55)' from the subsection[.]" *Id*. at 835 (¶13).

¶26. Unlike Qasoon's indictment, which actually pointed the defendant to the Schedule-I-drug-classification statute, Thomas's indictment plainly *did not* include a reference to section § 41-29-113. The inclusion of the chemical compound "FLUORO MDMB-PICA" was not a scrivener's error in the same sense that *Qasoon* contemplates.

¶27. Furthermore, our caselaw contains a recent and more closely on point case, *McFarland v. State*, 297 So. 3d 1110 (Miss. Ct. App. 2020). The indictment there that charged the defendant "did wilfully, unlawfully, and feloniously and knowingly traffic 118.379 grams of Cocaine, a Schedule I controlled substance, in violation of [Mississippi Code Annotated] [s]ection 41-29-139(f)(c)[.]" *Id*. at 1116 (¶22) (citing the subsection covering the crime of possession). The defendant "assert[ed] that his indictment was fatally defective because it identified the controlled substance at issue, cocaine, as a Schedule I controlled substance when it is actually a Schedule II controlled substance." *Id*. at (¶20).

¶28. But this Court held that "the incorrect classification of cocaine in the indictment was one of form, not of substance." *Id*. The *McFarland* decision noted, "[A] violation of the trafficking statute occurs in instances 'involving thirty . . . or more grams . . . of a Schedule I *or* II controlled substance." *Id*. at 1117 (¶25) (quoting Miss. Code Ann. § 41-29-139(f)(2)(C)). Therefore, "the penalty imposed is based upon 'the *weight* of the

controlled substance,' *not by its classification*." *Id*. (emphasis added) (citing Miss. Code

Ann. § 41-29-139(c)). In more detail,

> Upon review of the plain language of the indictment and the applicable charging statute, . . . the reference in the indictment to cocaine as a Schedule I rather than a Schedule II controlled substance did not render the indictment fatally defective . . . because the nature of the charge and its penalty in this case is governed by the weight of the cocaine involved, not whether it is identified as a Schedule I or II controlled substance.

*Id*. at (¶24). We concluded that "the indictment cited the charging statute, it named the

substance involved (cocaine), and included the weight of the cocaine (118.379

grams)—McFarland was plainly notified of the nature of the charge against him and the

potential penalties he faced." *Id*. at (¶26).

¶29.    The same is true in this case. Count II of Thomas's indictment cited the charging

statute, section 41-29-139(f), named the controlled substance involved, which was synthetic

cannabinoid, and included the weight of the seized substance, that being 200 grams or more.

Accordingly, Count II of Thomas's indictment sufficiently charged him with a

crime—trafficking synthetic cannabinoids, a controlled substance. So the inclusion of

"FLUORO MDMB-PICA" in Count II was mere surplusage in this particular indictment.[6]

¶30.    Also, the wording of Count II undisputedly tracked the statutory language of section

41-29-139(f), and "an indictment that tracks the language of the statute is generally sufficient

to inform the accused of the nature and cause of the accusation," so there was no defect on

---

[6] In all practicality, including these details in the indictment may have been to Thomas's benefit. This information gave him more specific notice of the charges against him and provided a better opportunity to mount his defense, so it cannot be said that he was prejudiced.

15

these grounds either. *Warren v. State*, 187 So. 3d 616, 622 (¶11) (Miss. 2016).

\* \* \* \* \*

¶31.   Lastly, just as *Qasoon* does not apply to this case, neither does *Hathorne*. 376 So. 3d at 1212 (¶8).

¶32.   The majority risks undercutting the crux of *Hathorne* that the "indictment was defective because it failed to *charge a crime at all*, not just that it lacked sufficient detail." *Id*. at 1214 (¶18). The Supreme Court held, "Granting relief in th[at] extraordinary case [was] the only just outcome[,]" because "[t]o hold otherwise in th[at] case would preclude relief from a person, who we have determined was never charged with a crime, serving twenty years in prison, day-for-day." *Id*. at 1215 (¶20).

¶33.   The same cannot be said in this case. The charge in *Hathorne* was for possessing a drug that the legislature had not declared illegal. If *only* the chemical name (FLUORO MDMB-PICA) was used in Count II here, then *Hathorne* would require reversal for a defective indictment.

¶34.   But Thomas's appeal deals with trafficking a drug that the legislature had *already declared illegal* years ago.[7] As the majority acknowledges, at the time of Thomas's indictment and conviction, "synthetic cannabinoids" were indeed regulated under our controlled substances laws. So the fact that Count II contained the language "SYNTHETIC CANNABINOIDS" salvaged the indictment. In other words, by including the words

---

[7] Again, Count II charged that Thomas "did knowing, willingly, voluntarily and felonously possess 200 grams or more of SYNTHETIC CANNABINOIDS . . . *with intent to transfer or distribute* the said controlled substance, a *violation of section 41-29-139(a)(1)*"—trafficking. (Emphasis added).

16

"synthetic cannabinoids," the indictment identified and gave Thomas notice of the specific controlled substance he was accused of trafficking—synthetic cannabinoids.

¶35.    Ultimately, while the right result is reached, I believe the correct path in getting there is to apply the trafficking statute in light of the penalty distinctions as set by statute.

**WESTBROOKS, McDONALD AND WEDDLE, JJ., JOIN THIS OPINION**.